**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**COVINGTON DIVISION**

IN RE

AARON R. BROWN                                        CASE NO. 19-20011
                                                      CHAPTER 13
DEBTOR

**MEMORANDUM OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART TRUSTEE'S OBJECTION TO CONFIRMATION OF PLAN**

The Chapter 13 Trustee contends that the Court should not confirm Debtor's Amended Chapter 13 Plan [ECF No. 35 (the "Plan")] because it does not properly treat a claim filed by Ally Bank secured by a 2015 Ford Mustang. Debtor disagrees and defends the treatment of a co-signed consumer claim in the Plan. For the reasons set forth below, the Court will require Debtor to bifurcate the co-signed auto loan with Ally Bank (the "Loan") and allow Debtor to propose more favorable treatment on the Loan than what is afforded to other unsecured creditors. However, any decision on whether Debtor may propose to pay interest on the unsecured portion of the Loan or whether relief from the co-debtor stay would be appropriate for a failure to pay the Loan in full is premature.

**FACTS**

Debtor filed his Chapter 13 petition on January 7, 2019. Debtor is a below-median debtor otherwise eligible for a Chapter 7 case. Debtor states that the predominant purpose of his bankruptcy is to protect his main asset, the Mustang. The Mustang's fair market value is $18,000.00, and Debtor owed a balance of $33,324.01 to Ally Bank on the Loan at the time Ally Bank filed its Proof of Claim. Debtor's father co-owns the Mustang and co-signed the Loan (the

"Co-Signer"), but Debtor is the Mustang's primary driver. Trustee agrees the Loan is a consumer debt and that the Mustang is Debtor's primary, if not only, means of transportation.

The Plan proposes to pay Trustee $1,020.00 per month for 46 months, from which Trustee will pay $840.00 per month to Ally Bank on the Loan. The Plan proposes, as a non-standard provision, to pay Ally Bank's claim in full at the contractual interest rate (7.45%) to fully protect Co-Signer. The Plan treats the Loan as a fully secured claim, $33,324.01, even though the Mustang's fair market value is only $18,000.00.

Trustee objects to the Plan on several grounds [ECF No. 40], arguing that the Plan: (1) must bifurcate the Loan into secured and unsecured amounts pursuant to § 506(a)[1]; (2) should pay the unsecured portion of the Loan pro rata with other unsecured claims pursuant to § 1322(b)(1); and (3) only may pay interest on the secured value of the Loan. Trustee avers that, if post-petition interest were allowed on the unsecured portion of the Loan, other unsecured creditors would receive approximately a 13% dividend, but, if disallowed, other unsecured creditors would receive approximately a 23% dividend. In response, Debtor contends that the § 1322(b)(1) authorizes him to treat the co-signed Loan as fully secured and payable at the contractual rate of interest, and that he must do so to keep the § 1301 co-debtor stay in place.

## **DISCUSSION**

The Court has jurisdiction over this matter. 28 U.S.C. § 1334(b). Venue is proper in this District. 28 U.S.C. §§ 1408 and 1409. This is a core proceeding, and the Court is authorized to enter a final order adjudicating this matter. 28 U.S.C. § 157(b)(2)(A) and (L).

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

I. **Debtor Must Bifurcate the Loan.**

Trustee argues that § 1322(b)(1) applies only to unsecured debts. Thus, Trustee contends that the Loan must be bifurcated into secured and unsecured portions pursuant to § 506(a) to achieve more favorable co-signed debt treatment, citing *In re Duff*, Case No. 13-10366, slip op. (Bankr. E.D. Ky. April 4, 2014) (Schaaf, J.). Section 506(a) "tells us that a secured creditor's claim is to be divided into secured and unsecured portions, with the secured portion of the claim limited to the value of the collateral." *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 961 (1997); *see also* 4 COLLIER ON BANKRUPTCY ¶ 506.03 (Alan N. Resnick & Henry J. Sommer eds., 16th 2019) (stating that "section 506(a) requires a bifurcation of a 'partially secured' or 'undersecured' claim into separate (and independent) secured and unsecured components"). Thus, Debtor must bifurcate the Loan into secured and unsecured portions.

II. **The Code Permits Confirmation of Chapter 13 Plans that Grant Favorable Treatment to Co-Signed Loans for Consumer Debts.**

Trustee initially contended that the Plan should pay the unsecured portion of the Loan pro rata with other unsecured claims during the applicable commitment period. [ECF No. 40 ¶ 2.] However, Trustee adjusted her position in her Memorandum of Law and now argues that the "payment in full of the co-signed claim is permissible, but the payment of interest on the unsecured claim unfairly discriminates against other unsecured claims." [ECF No. 52 at 5.] Additionally, Trustee states that "[c]onfirmation of a plan that proposes to pay an unsecured co-signed consumer debt in full while paying something less to other unsecured creditors may not be denied solely on that basis." [*Id.* (quoting *Carrion v. Rivera (In re Rivera)*, 490 B.R. 130 (B.A.P. 1st Cir. 2013); *Meyer v. Renteria (In re Renteria)*, 470 B.R. 838 (B.A.P. 9th Cir. 2012); *In re Russell*, 503 B.R. 788 (Bank. S.D. Ohio 2013)).]

There is no binding authority in the Sixth Circuit on this issue. Upon review, the Court agrees with Trustee's adjusted argument that a plan may propose to pay an unsecured co-signed consumer debt in full.[2] Section 1322(b)(1) creates an unambiguous exception to the prohibition against unfair discrimination in plan claim treatment of individual creditors who are liable with the debtor on a consumer debt, stating a chapter 13 plan may:

> designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; **however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims[.]**

11 U.S.C. § 1322(b)(1) (emphasis added). The emphasized section above is commonly referred to in caselaw as the "however clause." Congress added the "however clause" in 1984 with the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (1984).

Some courts believe that the unfair discrimination test[3] should be applied to co-signed loans. *See*, *e.g., In re Lilley*, No. 10-01079, 2010 Bankr. LEXIS 4867 (Bankr. N.D. Iowa Dec. 29, 2010) (denying plan confirmation when debtor proposed to pay 43% on co-signed student loan for debtor's daughter while paying other unsecured creditors a 20% dividend); *In re Applegarth*, 221 B.R. 914 (Bankr. M.D. Fla. 1998) (denying plan confirmation when debtor proposed to pay 100% on debt guaranteed by debtor's mother while paying other unsecured creditors a 10% dividend); *In re Strausser*, 206 B.R. 58 (Bankr. W.D.N.Y. 1997) (denying plan confirmation when debtor proposed to pay 100% on auto loan guaranteed by debtor's uncle); *In*

---

[2] The Court will address the payment of interest separately.

[3] The unfair discrimination test reviews "(1) whether the discrimination has a reasonable basis; (2) whether the debtor can carry out a plan without the discrimination; (3) whether the discrimination is proposed in good faith; and (4) whether the degree of discrimination is directly related to the basis or rationale for the discrimination." *In re Wolff*, 22 B.R. 510, 512 (B.A.P. 9th Cir. 1982).

*re Martin*, 189 B.R. 619 (Bankr. E.D. Va. 1995) (denying plan confirmation when debtor proposed to pay 100% on co-signed debt by non-filing spouse while paying other unsecured creditors a 6% dividend); *In re Battista*, 180 B.R. 355, 357 (Bankr. D.N.H. 1995) (denying plan confirmation when debtor proposed to pay 100% on two unsecured co-signed debts while paying other unsecured creditors a 6% dividend); *In re Cheak*, 171 B.R. 55 (Bankr. S.D. Ill. 1994) (denying plan confirmation when debtor proposed to pay 100% on co-signed debt with non-filing spouse while paying other unsecured creditors a 10% dividend).

This Court does not agree with that approach. It renders the addition of the "however clause" meaningless and "does not account for the special treatment Congress allowed in the case of co-signed debts." *In re Thompson*, 191 B.R. 967, 971 (Bankr. S.D. Ga. 1996). Congress added the "however clause" by amendment, so the Court "must presume that Congress would not have added language to the statute unless it intended the language to serve some purpose." *Renteria,* 470 B.R. at 843.

Other courts view the "however clause" as ambiguous, citing the divergent views of it in the caselaw and "battling cannons of statutory construction." *Renteria,* 470 B.R. at 844. Thus, some will review the statute's legislative history to determine that Congress added the "however clause" to carve out co-debtor consumer claims from the requirements of the unfair discrimination rule. *See*, *e.g.*, *id*. at 846 (reviewing legislative history and cases cited in Senate Report, and holding that "Congress sought to permit a chapter 13 debtor to separately classify and to prefer a codebtor consumer claim"); *Russell*, 503 B.R. at 799 (finding ambiguity because "several courts have found the however clause to be ambiguous" and holding upon review of legislative history that the "however clause permits the preferential treatment of" co-signed claims); *In re Markham*, 224 B.R. 599, 601 (Bankr. W.D. Ky. 1998) (stating that "the purposes

5

and intent underlying § 1322(b)(1) support an interpretation that the language of that section permits co-signed claims to be treated more favorably than other unsecured claims"). Other courts, after reviewing the legislative history, will then apply a three-part test to examine classifications by determining whether: (1) the claim is a co-debtor consumer claim, (2) the claim was for the benefit of the debtor, not the co-signer, and (3) the plan satisfies the other requirements for plan confirmation, particularly the good faith requirement under § 1325(a)(3). *See*, *e.g.*, *Rivera*, 490 B.R. at 141, *citing Thompson*, 191 B.R. at 971-72.

The Court sees no reason to consider legislative history to interpret the plain meaning of the words used in § 1322(b)(1). "Congress plainly created an unambiguous exception to the prohibition against unfair discrimination in plan claim treatment for a limited, defined class of creditors: those individual creditors that were liable with the debtor on consumer debt." *Renteria*, 470 B.R. at 849 (Pappas, J., concurring), *citing In re Hill*, 255 B.R. 579, 581 (Bankr. N.D. Cal. 2000) (describing 1984 amendment as "simple and unambiguous" and holding that the 'however clause' "does not mean that in all cases a plan which separately classifies co-signed [consumer] debt must be confirmed, but only that the basis of denial of confirmation may not be unfairness to the other unsecured debt"); *see also In re Dornon*, 103 B.R. 61, 64 (Bankr. N.D.N.Y. 1989) (holding that the court "finds itself bound by the plain statutory language of the" 'however clause'); *In re Monroe*, 281 B.R. 398, 400 (Bankr. N.D. Ga. 2002) (holding that "the language of § 1322(b)(1) creates an exception to the unfair discrimination test in cases involving a co-signed debt").

Neither divergent statutory interpretations in caselaw nor differing interpretations resulting from the application of various canons of statutory construction necessarily make a statute ambiguous. *Olden v. Lafarge Corp.*, 383 F.3d 495, 505 (6th Cir. 2004) ("Nor are we

6

persuaded by the now fashionable argument that because a number of brilliant minds have found [a] statute to be ambiguous, it is by definition so."); *see also Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) (stating that the Bankruptcy Code may be "awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue"). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.*, *citing Rubin* v. *United States*, 449 U.S. 424, 430 (1981).

Section 1322(b)(1)'s plain language provides that notwithstanding an unfair discrimination prohibition for separately classified unsecured debts, co-signed consumer debts may be treated differently. This is an exception to the unfair discrimination rule. As Judge Pappas' concurrence states in *Renteria*, the § 1322(b)(1) inquiry stops there. This ruling does not leave a trustee or general unsecured creditors without adequate remedies since "while different treatment of co-signed consumer debts is allowed, every chapter 13 debtor must prove the proposed plan has been filed in good faith under § 1325(a)(3), a Code provision that is adequate to the task of policing any debtor mischief." *Renteria*, 470 B.R. at 850-51 (Pappas, J., concurring).

### III. Issues Regarding Relief from Co-Debtor Stay and the Payment of Post-Confirmation Interest through the Plan are Premature.

Any decision on post-confirmation interest on the unsecured portion of the Loan is premature. As a result of the rulings herein, Debtor must propose a new plan that bifurcates the Loan. In that new plan, if Debtor proposes to pay interest on the unsecured portion of the Loan, and Trustee opposes the payment of interest, Trustee may object and provide supporting

authority. Debtor then may respond to the Trustee's position with his own authority and the Court can resolve the dispute with the benefit of the parties' fully-supported legal arguments.

Debtor also contends that paying the contractual rate of interest on the Loan is necessary to keep the § 1301 co-debtor stay in place. However, Ally Bank has not moved for relief from the co-debtor stay. Thus, this issue is not yet ripe.

### **CONCLUSION**

For the reasons stated above, Debtor must bifurcate the Loan into secured and unsecured portions. The "however clause" in § 1322(b)(1) is an unambiguous exception to the unfair discrimination rule, which allows Debtor to propose to pay Ally Bank's claim in full. This ruling does not negate the confirmation requirements of § 1325, including the good faith requirement in § 1325(a)(3).

Accordingly, it is hereby ORDERED as follows:

1. Trustee's Amended Report and Recommendation Concerning Confirmation of the Plan [ECF No. 40] is SUSTAINED IN PART and DENIED IN PART.

2. Debtor shall have 21 days to file an amended plan in accordance herewith or the case will be dismissed.

8

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Tracey N. Wise*
**Bankruptcy Judge**
**Dated: Friday, November 15, 2019**
**(tnw)**